**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANNE MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10 C 6273 |
| v. | ) | |
| | ) | |
| UNITED MEDICAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On January 26, 2011, Plaintiff Anne Mitchell brought the instant five-count Second Amended Complaint against her former employer Defendant United Medical Systems, Inc. ("UMS") for violating the Equal Pay Act, 29 U.S.C. § 206, *et seq.* (Count I) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2 (Count II). Mitchell also brings claims based on the Illinois Wage Payment and Collection Act ("Wage Act"), 820 ILCS 115/1, *et seq.* (Count III) and for common law breach of contract (Count IV). Mitchell further seeks an equitable accounting to determine the total amount of her lost commissions and bonuses (Count V). Before the Court is UMS's Motion to Dismiss Counts II, IV, and V of the Second Amended Complaint. For the following reasons, the Court denies UMS's motion.

**LEGAL STANDARD**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007); *McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). In determining a Rule 12(b)(6) motion, courts may consider exhibits attached to the pleadings if the complaint refers to the document at issue or if the document is central to the plaintiff's claims. *See McCready v. eBay, Inc.,* 453 F.3d 768, 891 (7th Cir. 2006); Fed.R.Civ.P. 10(c).

## BACKGROUND

In her Second Amended Complaint, Mitchell alleges that she began working for UMS in October 2000 as a Sales Consultant and that shortly thereafter her title changed to Regional Business Manager. (R. 23, Second Am. Compl. ¶ 6.) As one of UMS's Regional Business Managers, Mitchell was responsible for developing business and making sales. (*Id.* ¶ 7.) Further, Mitchell alleges that she entered into a written agreement with UMS regarding her compensation, which consisted of a base salary, plus commissions and bonuses directly tied to

2

her sales performance. (*Id.* ¶ 9.)

Mitchell contends that she was the only female Regional Business Manager throughout much of her employment at UMS. (*Id.* ¶ 11.) Mitchell also states that UMS paid its male employees – who performed substantially the same jobs as Mitchell and/or jobs which required equal skill, effort, and responsibility – higher commission rates and more bonuses than Mitchell. (*Id.* ¶ 12.) In 2003, UMS offered Mitchell a revised written commission agreement which provided that Mitchell would receive a 2% commission for existing accounts, a 5% commission for new accounts for the first twelve months, and a $1,500 commission per contract signed. (*Id.* ¶ 13.) Mitchell further alleges that in August 2006, UMS offered, but Mitchell did not accept, a revised written commission agreement which provided that Mitchell would receive a 1% commission for existing accounts, a 5% commission for new accounts for the first twelve months excluding MRI accounts, a 2½ % commission on new MRI accounts for the first twelve months, and a $1,500 commission per contract signed. (*Id.* ¶ 14.) On the other hand, Mitchell asserts that in or around 2006, UMS set higher commission rates for male Regional Business Managers than it proposed to set for Mitchell. (*Id.* ¶ 15.) Also, Mitchell alleges that UMS did not pay her the $1,500 commission per contract in violation of the written commission agreement. (*Id.* ¶ 16.)

Starting in or about 2006, Mitchell complained to her supervisor, Director of Sales Doug Stairs, that UMS was not paying her the commissions and bonuses according to her commission agreement. (*Id.* ¶ 18.) At the time, Mitchell was not aware of the commission rate differential between herself and her male co-workers. (*Id.*) Mitchell further alleges that she was subjected to less favorable terms and conditions of employment than male Regional Business Managers. (*Id.* ¶ 20.) She alleges, for example, that because she was female she was excluded from

company-related meetings and events, including a golf outing in conjunction with a company sales meeting. (*Id.*)

On numerous occasions, Mitchell asked for full payment of her commissions and bonuses and for information so that she could determine the correct amount due her, but UMS refused. (*Id.* ¶ 21.) When Mitchell objected to the company's refusal to pay her the commissions and bonuses to which she was entitled, Stairs called her "combative." (*Id.*) Mitchell maintains that during the summer of 2007, Stairs stopped verbally communicating with her, thereby, interfering with her ability to get her job done. (*Id.* ¶ 23.) Also, Mitchell alleges that Stairs did not treat male employees in the same angry and disparaging manner as he treated her. (*Id.* ¶ 24.)

Meanwhile, Mitchell asserts that UMS continued to withhold her commissions and bonuses through the end of her employment. (*Id.* ¶ 26.) Mitchell alleges that by October 2007, the conditions of her employment became so intolerable as a direct result of UMS's conduct that she was forced to resign after seven years of employment with UMS. (*Id.* ¶ 27.) Mitchell specifically alleges that she was constructively discharged on or about October 4, 2007. (*Id.*)

## ANALYSIS

**I.    Sex Discrimination Claim – Count II**

In its motion to dismiss, UMS first argues that the Court should dismiss Mitchell's Title VII sex discrimination claim as alleged in Count II of the Second Amended Complaint because it is untimely. Specifically, UMS maintains that although Mitchell alleges in her Second Amended Complaint that she filed her charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 25, 2008, her actual EEOC charge indicates that Mitchell signed the charge on August 18, 2008 and that the EEOC received the charge on

August 20, 2008. (R. 27, Ex. 2, EEOC charge.) Accordingly, UMS argues that Mitchell's EEOC charge was untimely because she filed it over 300 days after the alleged unlawful employment action, namely, her constructive discharge that took place on October 4, 2007. *See* 42 U.S.C. § 2000e-5(e)(1); *Jackson v. City of Chicago*, 552 F.3d 619, 623 (7th Cir. 2009).

On the other hand, Mitchell maintains that her EEOC intake questionnaire signed on July 24, 2008 and filed on July 25, 2008, along with her accompanying cover letter, constitutes an EEOC charge under the circumstances. *See Federal Express Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008). In *Holowecki,* the issue "was whether an intake questionnaire supplemented by a six-page affidavit constitutes a 'charge' for purposes of timeliness of an ADEA lawsuit." *Swearnigen-El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 865 (7th Cir. 2010). The *Holowecki* Court specifically held that:

> In addition to the information required by the regulations, *i.e.,* an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

*Id*. at 402. As the Seventh Circuit clarifies "a document may be a 'charge' even if it lacks an appropriate caption and charging language. A piece of paper that alleges discrimination and asks the agency to take remedial action suffices." *EEOC v. Watkins Motor Lines, Inc.,* 553 F.3d 593, 597-98 (7th Cir. 2009).

Thus, the Court turns to whether Mitchell's EEOC intake questionnaire signed on July 24, 2008 constitutes an EEOC charge under the circumstances. As guidance, the Court considers the relevant EEOC regulation defining the required contents of a charge as follows:

> (1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

5

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a).

In Mitchell's EEOC intake questionnaire, she sufficiently gives this information and specifically identifies the parties involved and describes the basis of her sex discrimination claim as required by *Holowecki*. (R. 32, Ex. B, Intake Questionnaire.) In fact, UMS does not challenge the sufficiency of her intake questionnaire as to these requirements. Instead, USM argues that Mitchell's intake questionnaire cannot be deemed an EEOC charge because it does not request the EEOC to take remedial action. *See Holowecki,* 552 U.S. at 402; *Watkins Motor Lines, Inc.,* 553 F.3d at 597-98. The plaintiff in *Holowecki*, for example, filed a six-page affidavit in support of his intake questionnaire in which he stated "[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment...." *Holowecki,* 552 U.S. at 405. The *Holowecki* Court concluded that this additional information sufficiently fulfilled the requirement that an EEOC charge must ask the agency to take remedial action. *See id.*

In her June 23, 2008 cover letter to the EEOC Intake Department that accompanied her

6

intake questionnaire, Mitchell stated as follows: "I hereby submit my letter and completed 'Intake Form' in order to initiate a pay discrimination complaint against my previous employer, United Medical Systems ("USM")." (Ex. B, letter.) Mitchell also informs the EEOC Intake Department in her letter that she "wish[es] to initiate this important complaint." (*Id*.) She further stated that she wants to meet with an EEOC agent to provide additional documentation and discuss her matter in greater detail. (*Id*.) Based on these statements in her cover letter to the EEOC, along with her intake questionnaire, Mitchell's submissions can reasonably be interpreted as a request for the EEOC to "activate its machinery and remedial processes" to help her file a sex discrimination lawsuit. *See Holowecki*, 552 U.S. at 402. Because Mitchell has fulfilled the *Holowecki* requirements, her sex discrimination claim is timely.

On a final note, the Court rejects USM's argument that Mitchell's intake questionnaire and accompanying letter cannot be considered an EEOC charge because the EEOC did not treat it as such. The *Holowecki* Court cautioned against conditioning the definition of a charge upon the EEOC's subsequent actions: "It would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control." *Id.* at 404.

## II. Breach of Contract Claim – Count IV

Next, UMS argues that the Court should dismiss Mitchell's breach of contract claim as alleged in Count IV of the Second Amended Complaint because she has failed to sufficiently allege facts that a contract existed under the circumstances. To established a breach of contract claim under Illinois law, a plaintiff must eventually establish: (1) the existence of a valid and enforceable contract; (2) plaintiff's substantial performance; (3) defendant's breach; and (4) a

resultant injury to plaintiff. *See Reger Dev., LLC v. National City Bank,* 592 F.3d 759, 764 (7th Cir. 2010); *Carlton at the Lake, Inc. v. Barber,* 401 Ill.App.3d 528, 531, 340 Ill.Dec. 669, 928 N.E.2d 1266, 1270 (Ill. 2010).

Accepting Mitchell's factual allegations as true, in her Second Amended Complaint she alleges that she entered into a written agreement with UMS regarding her compensation, which consisted of a base salary, plus commissions and bonuses directly tied to her sales performance. Specifically, she alleges that she had a written commission agreement with UMS that provided for a 2% commission for existing accounts, a 5% commission for new accounts for the first twelve months, and a $1,500 commission per contract signed. Mitchell also alleges starting in or about 2006, UMS did not pay her the commissions and bonuses according to her written commission agreement. Mitchell further alleges that UMS continued to withhold her commissions and bonuses through the end of her employment in October 2007. Based on these allegations, Mitchell has sufficiently alleged her breach of contract claim under the federal notice pleading standards because she has alleged enough facts to state a claim for relief that is plausible on its face. *See Twombly,* 550 U.S. at 570; *see also* Fed.R.Civ.P. 8(a)(2). Mitchell is bringing a simple breach of contract claim and her allegations sufficiently put UMS on notice of her claim and the grounds upon which it rests. *See Limestone Dev. Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory). Therefore, the Court denies UMS's motion to dismiss Count IV of the Second Amended Complaint.

Finally, the Court rejects USM's argument that Mitchell's breach of contract claim fails because she did not attach any written contract to her Second Amended Complaint as required

8

by 735 ILCS 5/2-606. To clarify, Section 5/2-606 is a procedural rule and because this action is in federal court, the Federal Rules of Civil Procedure – which do not require any such attachments – apply. *See Hefferman v. Bass,* 467 F.3d 596, 599 (7th Cir. 2006) ("Federal Rules of Civil Procedure apply to all cases filed in federal court, no matter what the basis of subject matter jurisdiction."); *Arnold v. Janssen Pharm., Inc.,* 215 F.Supp.2d 951, 962 (N.D. Ill. 2002) ("federal courts, unlike Illinois state courts, do not require that critical documents be attached to the complaint.").

### III.     Action for Accounting – Count V

Also, UMS argues that the Court should dismiss Mitchell's claim for the equitable remedy of an accounting because Mitchell has an adequate legal remedy under the theory of breach of contract claim as alleged in Count IV of her Second Amended Complaint. *See Kerasotes v. Estate of Kerasotes,* 238 Ill.App.3d 1020, 1030-31, 178 Ill.Dec. 849, 605 N.E.2d 643 (Ill. 1992) ("to sustain an action for an equitable accounting, plaintiffs must show that they have no adequate legal remedy"). Under the Federal Rules of Civil Procedure, which govern this lawsuit brought in federal court, plaintiffs may allege separate legal theories in the alternative at the pleading stages of a lawsuit as Mitchell has done here. *See* Fed.R.Civ.P. 8(d)(2); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 448 (7th Cir. 2011). Therefore, the Court denies UMS's motion to dismiss Count V of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Date:** April 20, 2011

            **ENTERED**

            _____
            **AMY J. ST. EVE**
            **United States District Court Judge**